**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Crim. No. 1:20-CR-0287-02 |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOHNNY QUINONES | : | Judge Jennifer P. Wilson |

## <u>MEMORANDUM</u>

Defendant Johnny Quinones ("Quinones") is charged in an eleven-count indictment with one count of prohibited person in possession of a firearm and one count of prohibited person in possession of ammunition, both in violation of 18 U.S.C. § 922(g)(1).  (Doc. 1.)  Quinones moves this court to grant his motion to dismiss the Section 922(g)(1) counts in the indictment because they violate the Second Amendment to the United States Constitution as applied to him.  (Doc. 183.)  For the reasons that follow, the court will deny the motion.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On November 4, 2020, Quinones and three others were charged in an eleven-count indictment.  (Doc. 1.)  Quinones was charged with four counts: conspiracy to commit an offense against the United States in violation of 18 U.S.C. § 371 (Count 1); false statements to obtain firearms in violation of 18 U.S.C. § 922(a)(6) (Count 2); prohibited person in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) (Count 3); and prohibited person in possession of

1

ammunition in violation of 18 U.S.C. § 922(g)(1) (Count 4).  (Doc. 1.)  Following a three-day bench trial, the court rendered a verdict on October 18, 2023, finding Quinones guilty on all counts.  (Doc. 261.)  The court made findings on the record pursuant to Federal Rule of Criminal Procedure 23(c) at the conclusion of trial, which are briefly summarized here.  As it relates to Counts 3 and 4, the parties' stipulated that Quinones was previously convicted of a felony and the firearm and ammunition at issue were in or affecting interstate or foreign commerce.  (Doc. 279, pp. 92–98.)[1]  The court found that a co-defendant placed the firearm in the room where Quinones intermittently stayed, and pole camera footage showed Quinones in possession of that gun at a corner convenience store.  (*Id.* at 94–95.)  Regarding the ammunition, officers found loose rounds of ammunition at various locations in the house that Quinones stayed at concluding that he had joint possession of the ammunition.  (*Id.* at 96–97.)  Quinones also knew he was a person prohibiting from possessing a firearm and ammunition because he joined the conspiracy in this case to have co-Defendant Mansfield straw purchase firearms and the accompanying ammunition.  (*Id.* at 96, 98.)

Quinones was found to have violated Section 922(g)(1) because he knowingly possessed a firearm and ammunition, which were shipped and transported in interstate and foreign commerce, while knowing that he was

---

[1] For ease of reference, the court uses the page numbers from the CM/ECF header.

previously convicted of at least one crime punishable by imprisonment for a term of more than one year.  (Doc. 261.) The Government asserts that Quinones has multiple drug trafficking convictions that disqualify him from possession of a firearm and ammunition pursuant to Section 922(g)(1).  (Doc. 293, p. 25.)

On September 26, 2022, Quinones filed a motion to dismiss Counts 1, 3, and 4 of the indictment based on the argument that the application of Section 922(g)(1) to him violates the Second Amendment.[2]  (Doc. 183.)  After the motion was fully briefed, the court denied the motion on November 30, 2022, based on the state of the law at that time.  (*See* Docs. 184, 198, 204, 211.)

Prior to the bench trial, on June 29, 2023, Quinones filed a motion for reconsideration of the court's order denying his motion to dismiss, which was fully briefed.  (Docs. 231, 232, 240, 242.)  Therein, he asserted that reconsideration was warranted because, following the court's denial of his motion to dismiss, the Third Circuit vacated the panel opinion in *Range v. Attorney General*, 53 F.4th 262 (3d Cir. 2022) (*per curiam*), and then issued an *en banc* opinion in *Range v. Attorney General*, 69 F.4th 96 (3d Cir. 2023) ("*Range I*"), finding that Section 922(g)(1) violates the Second Amendment as applied to Bryan Range based on the

---

[2] The court notes that although the motion to dismiss moves for dismissal of Counts 1, 3, and 4, the briefing only analyzes Counts 3 and 4.  In Quinones's supplemental briefing, he only references Counts 3 and 4.  (*See* Docs. 290, 294.)  Thus, the court only analyzes the arguments herein as to Counts 3 and 4.

application of the holding in *New York State Rifle Association v. Bruen*, 597 U.S. 1 (2022).  (Doc. 231.)

On October 10, 2023, this court entered an order granting the motion for reconsideration but staying the resolution of the motion to dismiss pending the Third Circuit Court of Appeals' review of the consolidated appeal in *United States v. Quailes*, No. 23-2533 (3d Cir. 2023).  (Doc. 258.)  Following the Third Circuit's decision in that appeal, the court directed the parties to confer and determine whether *Quailes* and *United States v. Moore*, 111 F. 4th 266 (3d Cir. 2024) applied to the facts of this case, namely, whether Quinones was serving a term of supervised release, probation, or parole for any state or federal criminal offense at the time when he is alleged to have committed the 922(g)(1) violations in this case. (Doc. 286.)  The parties complied and notified the court that Quinones was not on state or federal probation, parole, or supervision at the time of the offenses alleged in the indictment.  (Doc. 287.)  Thereafter, the court directed the parties to submit supplemental briefs to address the impact of relevant decisions issued while Quinones's motion to dismiss was stayed.  (Docs. 290, 293, 294.)

Quinones is awaiting sentencing, which was generally continued pending resolution of this motion to dismiss.  (Doc. 280.)  Quinones has been detained since his initial appearance and arraignment on December 23, 2020.  (*See* Doc. 46.)

4

**STANDARD OF REVIEW**

Federal Rule of Criminal Procedure 12 allows parties to "raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." FED. R. CRIM. P. 12(b)(1).  In his pretrial motion to dismiss, Quinones asserts an as-applied challenge to the constitutionality of Section 922(g)(1).  (*See* Docs. 66, 110, 129, 146, 149, 150.)  In order to resolve an as-applied challenge, the court determines whether a law with some permissible uses "is nonetheless unconstitutional as applied" to the movant's conduct.  *Spence v. Washington*, 418 U.S. 405, 414 (1974).

**DISCUSSION**

**A. The Parties' Arguments Regarding the Constitutionality of Section 922(g)(1) As Applied to Quinones**

Quinones argues that applying the two-part test articulated in *Bruen*, 597 U.S. at 1, Section 922(g)(1) impacts his rights as a person protected by the Second Amendment, and that the law is inconsistent with the Nation's historical traditions of firearms regulation.  (Doc. 184, pp. 3–16.)  The Government argues in opposition that *Bruen* does not undermine the constitutionality of Section 922(g)(1), thus, the motion should be denied.  (Doc. 198, pp. 2–18.)

In their supplemental briefs, each party addresses the impact of four relevant decisions issued while Quinones's motion to dismiss was stayed and after the court granted reconsideration.  (Docs. 290, 293, 294.)  Specifically, the parties address

*United States v. Rahimi*, 602 U.S. 680 (2024), *Range v. Attorney General*, 124 F.4th 218 (3d Cir. 2024) ("*Range II*"), *United States v. Quailes*, 126 F.4th 215 (3d Cir. 2025), and *Pitsilides v. Barr*, 128 F.4th 203 (3d Cir. 2025). Quinones further argues that *Range II* reaffirmed *Bruen*'s two-step framework and that it is undisputed that he has met the first step of the *Bruen* test. (Doc. 290, pp. 5–6.) Quinones submits that "the Government has not met its burden of showing that permanent disarmament of Mr. Quinones is consistent with history and tradition, just as it was unable to do in *Range II*." (*Id.* at 6.)

The Government essentially concedes that Quinones is one of "the people" protected by the Second Amendment pursuant to *Range II*, but argues that Quinones's motion should be denied because the prohibition on firearm and ammunition possession in Section 922(g)(1) as applied to Quinones is supported by relevant historical tradition. (*Id.* at 9–30.) In making this argument, the Government conducts a "dangerousness" analysis and submits that Quinones's possession of a firearm poses a particular danger because of his prior convictions. (*Id.* at 23–30.)

In his supplemental reply brief, Quinones responds to the Government's argument regarding dangerousness submitting that his as-applied challenge to Section 922(g)(1) does not fail simply because his criminal history includes convictions for "serious crimes." (Doc. 294, pp. 2–5.) And, for the first time,

Quinones argues that the "dangerousness" requirement creates vagueness in Section 922(g)(1) that rises to the level of a due process violation rendering the statute facially unconstitutional.  (*Id.* at 6–7.)

### B. The Text of the Second Amendment and Significant Rulings on the Second Amendment

The text of the Second Amendment states: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."  U.S. CONST. amend. II.

### 1.  Supreme Court Precedent from *Heller* to *Rahimi*

There was a sea change in the Supreme Court's analysis of the Second Amendment from the militia-based rationale articulated in *United States v. Miller*, 307 U.S. 174 (1939), to the pre-existing individual right explained in *District of Columbia v. Heller*, 554 U.S. 570 (2008), and *McDonald v. Chicago*, 561 U.S. 742 (2010).  In those decisions, the Court "recognized that the Second and Fourteenth Amendments protect the right of an ordinary, law-abiding citizen to possess a handgun in the home for self-defense."  *Bruen*, 597 U.S. at 8–9 (citing *Heller*, 554 U.S. at 570; *McDonald*, 561 U.S. at 742).  And then, in 2022, the Court held in *Bruen* "that the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home."  *Id.*

Importantly, in *Bruen*, the Court established a two-step test to determine if a particular regulation violates the Second Amendment:

> In keeping with *Heller*, we hold that when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. To justify its regulation, . . . the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation. Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

*Id.* at 24 (quoting *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50, n.10 (1961)).

To measure consistency with historical firearm regulations, the modern regulation must be "relevantly similar" to historical predecessors. *Id.* at 29. The Court explained that the burden on the Government is to identify a "well-established and representative historical *analogue*, not a historical *twin*. So even if a modern-day regulation is not a dead ringer for historical precursors, it still may be analogous enough to pass constitutional muster." *Id.* at 30. And then, in *Rahimi*, the Court clarified that, when conducting *Bruen's* history-and-tradition inquiry, "the appropriate analysis . . . [is] whether the challenged regulation is consistent with the principles that underpin our regulatory tradition." 602 U.S. at 692. The Court rejected the idea that the examination of historical analogues signals "a law trapped in amber." *Id.* at 691.

## 2. Third Circuit Precedent Applying *Bruen* and *Rahimi*

The Third Circuit had occasion to apply both *Bruen* and *Rahimi* in the appeal filed in the *Range* case. This appeal has traveled a long procedural road to finality. In 2020, Bryan Range filed suit in the Eastern District of Pennsylvania,

seeking a declaration that Section 922(g)(1) violates the Second Amendment as applied to him. Applying then-controlling Third Circuit precedent, *United States v. Marzzarella*, 614 F.3d 85 (3d Cir. 2010), *Binderup v. Attorney General*, 836 F.3d 336 (3d Cir. 2016) (en banc) (plurality), *Holloway v. Attorney General*, 948 F.3d 164 (3d Cir. 2020), and *Folajtar v. Attorney General*, 980 F.3d 897 (3d Cir. 2020), the district court granted summary judgment to the Government. *Range v. Lombardo*, 557 F. Supp. 3d 609, 611, 613–14 (E.D. Pa. 2021). Range appealed.

While his appeal was pending, the Supreme Court decided *Bruen*. A Circuit panel affirmed the district court decision, applying *Bruen* and concluding that the Government met its burden to show that Section 922(g)(1) reflects the Nation's historical tradition of firearm regulation. *Range v. Att'y Gen.*, 53 F.4th 262, 266 (3d Cir. 2022) (per curiam). Range petitioned for rehearing en banc, and the Circuit granted the petition and vacated the panel opinion. *Range v. Att'y Gen.*, 56 F.4th 992 (3d Cir. 2022). The en banc court reversed and remanded for the District Court to enter judgment in favor of Range, finding that Range remained one of "the people" protected by the Second Amendment and the Government did not show that the Nation has a longstanding history and tradition of disarming people like Range. *Range v. Att'y Gen.*, 69 F.4th 96, 98 (3d Cir. 2023) (en banc) ("*Range I*").

The Government filed a petition for writ of certiorari.  While that petition was pending, the Supreme Court decided *Rahimi*.  The Court then vacated *Range I* and remanded for further consideration.  *Garland v. Range*, 144 S. Ct. 2706 (2024).

In the second *en banc* opinion following remand, the Third Circuit reached the same conclusions as in *Range I*.  The Circuit concluded that Bryan Range remains one of "the people" for purposes of the Second Amendment notwithstanding his prior conviction.  *Range II*, 124 F.4th at 226–28.  The Circuit next concluded that Section 922(g)(1) regulates Second Amendment conduct and "'the Constitution presumptively protects that conduct.'"  *Id.* at 228 (quoting *Bruen*, 597 U.S. at 17).  The Circuit then examined whether the Government had shown that applying Section 922(g)(1) to Range would be "'consistent with the Nation's historical tradition of firearm regulation'" and concluded that it had not carried its burden.  *Id.* (quoting *Bruen*, 597 U.S. at 24).  The Third Circuit concluded its analysis as follows:

> Our decision today is a narrow one.  Bryan Range challenged the constitutionality of 18 U.S.C. § 922(g)(1) only as applied to him given his violation of 62 Pa. Stat. Ann. § 481(a).  Range remains one of "the people" protected by the Second Amendment, and his eligibility to lawfully purchase a rifle and a shotgun is protected by his right to keep and bear arms.  More than two decades after he was convicted of food-stamp fraud and completed his sentence, he sought protection from prosecution under § 922(g)(1) for any future possession of a firearm.  The record contains no evidence that Range poses a physical danger to others.  Because the Government has not shown that our Republic has

a longstanding history and tradition of depriving people like Range of their firearms, § 922(g)(1) cannot constitutionally strip him of his Second Amendment rights.

*Id.* at 232.

Soon after *Range II* was decided, the Third Circuit addressed another civil case in which a plaintiff convicted of a felony offense brought suit seeking a declaration that application of Section 922(g)(1) to him would violate the Second Amendment. *Pitsilides v. Barr*, 128 F. 4th 203 (3d Cir. 2025). Upon examination of *Bruen*, *Rahimi*, and *Range II*, the Court explained the "upshot of these cases." *Id.* at 210–11. First, a court's "inquiry into *principles* that underlie our regulatory tradition does not reduce historical analogizing to an exercise in matching elements of modern laws to their historical predecessors." *Id.* at 210 (emphasis supplied). Second, "whatever other recourse may or may not be available, felons seeking to challenge the application of § 922(g)(1) at least may bring declaratory judgment actions" and relief may be granted on a record sufficient to enable "individualized fact-finding." *Id.* Finally, "while *Rahimi* and *Range II* did not purport to comprehensively define the metes and bounds of justifiable burdens on the Second Amendment right, they do, at a minimum, show that disarmament is justified as long as a felon continues to 'present a special danger of misus[ing firearms],' in other words, when he would likely 'pose[] a physical danger to others' if armed." *Id.* (quoting *Rahimi*, 602 U.S. at 698; *Range II*, 124 F.4th at 232). The *Pitsilides*

11

decision makes clear that the "'Second Amendment's touchstone is
dangerousness.'" *Id.* at 210–11 (quoting *Folajtar*, 980 F.3d at 924 (Bibas, J.,
dissenting); citing *Kanter v. Barr*, 919 F.3d 437, 451 (7th Cir. 2019) (Barrett, J.,
dissenting), *United States v. Bullock*, 123 F.4th 183, 185 (5th Cir. 2024) (per
curiam), *United States v. Williams*, 113 F.4th 637, 657 (6th Cir. 2024), and *United
States v. Jackson*, 110 F.4th 1120, 1128 (8th Cir. 2024)).

Ultimately, the Court remanded to the District Court for additional discovery
probative "to the prevailing Second Amendment analysis, including whether
Pitsilides poses a special danger of misusing firearms in a way that would endanger
others." *Pitsilides*, 128 F.4th at 213.  However, the Court instructed that:

> Courts adjudicating as-applied challenges to § 922(g)(1) must consider
> a convict's entire criminal history and post-conviction conduct
> indicative of dangerousness, along with his predicate offense and the
> conduct giving rise to that conviction, to evaluate whether he meets the
> threshold for continued disarmament.  As *Range II* illustrated,
> consideration of intervening conduct plays a crucial role in determining
> whether application of § 922(g)(1) is constitutional under the Second
> Amendment. *See* 124 F.4th at 232.  Indeed, such conduct may be highly
> probative of whether an individual likely poses an increased risk of
> "physical danger to others" if armed. *Id.*

*Id.* at 212.  That is because an individual may be disarmed "consistent with the
historical principle that legislatures may disarm a person who poses a danger to the
physical safety of others." *Id.* (citing *Rahimi*, 602 U.S. at 693; *Range II*, 124 F.4th
at 232; *Bullock*, 123 F.4th at 185; *Williams*, 113 F.4th at 662; and *Jackson*, 110
F.4th at 1128.)  Further, the Court observed that "both history and common sense

reflect that this 'dangerousness' includes not only direct involvement in physical violence" but also conduct that is "'dangerous because [it] often lead[s] to violence,'" such as burglary and drug dealing. *Id.* at 213 (quoting *Folajtar*, 980 F.3d at 922 (Bibas, J., dissenting); citing *Williams*, 113 F.4th at 659). This assessment "necessarily requires individualized factual findings." *Id.*

The Third Circuit has issued two non-precedential decisions in criminal cases following the decisions in *Range II* that provide additional guidance relevant to this matter. In *United States v. White*, No. 23-3013, 2025 WL 384112, at *2 (3d Cir. Feb. 4, 2025), *petition for cert. filed*, No. 24-7158 (May 8, 2025), the Court rejected the Second Amendment challenge to Section 922(g)(1) because White's "prior felony convictions for drug distribution, aggravated assault, and carrying a firearm without a license demonstrate that he 'present[s] a special danger of misus[ing firearms],' and would likely pose an increased risk of 'physical danger to others' if armed." 2025 WL 384112, at *2 (quoting *Rahimi*, 602 U.S. at 698; *Range II*, 124 F.4th at 232). Looking at White's entire criminal history, the Court concluded that his convictions, considered collectively, show that White would pose a danger to others if armed because his prior criminal activities could lead to violent confrontation. *Id.* (citing *Williams*, 113 F.4th at 659 for the proposition that legislatures may disarm those convicted of crimes like drug dealing because such crimes pose a significant threat of danger, warranting disarmament).

In *United States v. Williams*, No. 23-2773, 2025 WL 1341877, at *2 (3d Cir. May 8, 2025), the Court concluded that the District Court did not commit plain error in rejecting Williams' Second Amendment challenge. That is because Williams has a lengthy criminal history that distinguished him from Bryan Range, including two convictions for possession of cocaine with intent to distribute, one conviction for possession of marijuana with intent to distribute, and one conviction for child endangerment. *Id.* Given Williams' "dramatically different criminal record," the Circuit's narrow holding in *Range II* did not compel the dismissal of the Section 922(g)(1) conviction. *Id.*

Finally, there are two additional precedential decisions from the Third Circuit that provide additional guidance with respect to the analysis of a Second Amendment challenge to Section 922(g)(1). In *United States v. Moore*, 111 F.4th 266, 273 (3d Cir. 2024), *petition for cert. filed*, No. 24-968 (Mar. 7, 2025), the Third Circuit held that "[a] convict completing his sentence on [federal] supervised release does not have a Second Amendment right to possess a firearm." And, in *United States v. Quailes*, 126 F.4th 215, 224 (3d Cir. 2025), *petition for cert. filed*, No. 24-7033 (Apr. 18, 2025), the Third Circuit extended the holding in *Moore* to individuals on state parole or probation. However, this precedent is not controlling in this case because the defendant was not on any form of supervision at the time of the alleged offense conduct.

### 3. Application of Relevant Precedent to Defendant's Second Amendment Challenge

#### i. *Bruen* Step One Analysis

The first question is whether the text of the Second Amendment applies to Defendant and his conduct. *See Bruen*, 597 U.S. at 31–33; *Range II*, 124 F.4th at 225; *Pitsilides*, 128 F.4th at 209. Here, the Government does not expressly concede that Quinones remains among "the people" despite his felony convictions, but analyzes both steps of the *Bruen* analysis. (Doc. 293, pp. 9–30.) Rightfully so, based on the controlling precedent in *Range II* concluding that an individual who has a felony conviction remains among "the people." *See Range II*, 124 F.4th at 228.

In *Range II*, the Court characterized "the easy question" as "whether § 922(g)(1) regulates Second Amendment conduct." 124 F.4th at 228. The Court then stated: "It does." *Id.* In relevant part, the statute makes the possession of any firearm or ammunition unlawful for a person convicted of an offense punishable by imprisonment for a term exceeding one year. 18 U.S.C. § 922(1). The statute criminalizes the possession of any firearm or ammunition for any purpose (lawful or otherwise) by this class of persons. And it appears that the Circuit determined in *Range II* that this regulation of this specific conduct is clearly covered by the Second Amendment.

The court also notes that in the non-precedential *White* decision, where the criminal defendant argued that Section 922(g)(1) is unconstitutional as applied to him, the Circuit did not address the first *Bruen* question at all, and only addressed the second *Bruen* question.  2025 WL 384112 at *2.  Since *Bruen* instructs that the second step of conducting a historical tradition analysis is only necessary when the person and his conduct are covered by the Second Amendment, 597 U.S. at 24, this may suggest that the Circuit has determined that the first *Bruen* question did not require further discussion in the context of a Second Amendment challenge to Section 922(g)(1).  On the other hand, it may suggest that when a defendant's challenge fails at the second *Bruen* step, as was the case in *White*, it is not necessary to analyze the first *Bruen* step.  In any event, the Circuit clearly did not analyze whether the defendant in *White* stated a purpose for his possession of a firearm.

### ii. *Bruen* Step Two Analysis

Having determined that the defendant and his conduct are covered by the Second Amendment and presumptively protected, the court must next determine "whether the Government can strip him of his right to keep and bear arms" by analyzing whether application of Section 922(g)(1) to this defendant is "'consistent with the Nation's historical tradition of firearm regulation.'"  *Range II*, 124 F.4th at 228 (quoting *Bruen*, 597 U.S. at 24); *see also Pitsilides*, 128 F.4th at 209.

The court's analysis of the *Bruen* step two question is guided by the controlling precedent in *Range II* and *Pitsilides*.  As detailed previously, the court will assess this question according to "the prevailing Second Amendment analysis, including whether [the individual at issue] poses a special danger of misusing firearms in a way that would endanger others."  *Pitsilides*, 128 F.4th at 213.  The court will consider the defendant's "entire criminal history and post-conviction conduct indicative of dangerousness, along with his predicate offense and the conduct giving rise to that conviction, to evaluate whether he meets the threshold for continued disarmament."  *Pitsilides*, 128 F. 4th at 212.  That is because an individual may be disarmed "consistent with the historical principle that legislatures may disarm a person who poses a danger to the physical safety of others."  *Id.*; *see also Range II*, 124 F.4th at 230 (citing *Rahimi* in support of the proposition that disarming (at least temporarily) physically dangerous people based on a finding that such person poses a safety threat is consistent with the historical tradition of disarming people who pose a clear threat of physical violence to another); *United States v. Bullock*, 123 F.4th 183, 185 (5th Cir. 2024); *United States v. Williams*, 113 F.4th 637, 649–663 (6th Cir. 2024).

In conducting this analysis, the court is mindful of the narrowness of the *Range II* holding.  The Circuit found only that our Nation's history and tradition do not support permanent disarmament of Bryan Range who only has a two-decades

old conviction for food-stamp fraud and there is no evidence of ongoing recidivism or threat of physical danger to others. *See Range II*, 124 F.4th at 232.  In assessing whether the criminal record and available background information about the defendant in this case lead to the conclusion that the defendant is, in fact, sufficiently dangerous so that the application of Section 922(g)(1) to him is consistent with the Second Amendment, the court will view Bryan Range as one data point on the dangerousness spectrum, specifically, on the far end of non-dangerousness.

The Government contends that applying Section 922(g)(1) to Quinones is constitutional because his prior drug trafficking convictions are "serious and indicate that his firearm possession would pose a danger to himself or others." (Doc. 293, p. 25.)  Because Quinones is pending sentencing and a presentence investigation report ("PSR") has been prepared, the Government relied on the convictions detailed in the PSR.  (Doc. 293, p. 27; Doc. 270, ¶¶ 29, 32.)  The PSR shows that Quinones has Pennsylvania felony convictions for possession with intent to deliver crack cocaine in 2012 and delivery of crack cocaine in 2014. (Doc. 270, ¶¶ 29, 32.)  Quinones also has convictions for possession of drug paraphernalia and tampering with evidence in 2012, harassment in 2013, criminal use of a communication facility in 2014, simple assault in 2015, possession of a controlled substance and possession of drug paraphernalia in 2016, and possession

of drug paraphernalia in 2020.  (*Id.* ¶¶ 29–36.)  The Government submits that the prior convictions for drug trafficking alone provide a basis to reject Quinones's constitutional challenged based on the demonstrated dangerousness of drug trafficking crimes and likelihood of violence that accompanies drug trafficking. (Doc. 293, pp. 25–28.)

Quinones maintains that the Government has not met its burden of showing the Nation's historical tradition of permanently disarming him as no record has been developed on the "dangerousness" inquiry.  (Doc. 294, pp. 2–5, & n.3.)

Having considered both parties' arguments, the court concludes that Quinones's prior convictions for felony drug trafficking demonstrate that Quinones presents a danger of misusing firearms and would likely pose an increased risk of physical danger to others if permitted to be armed.[3]  *See White*, 2025 WL 384112 at *2 (holding that defendant's prior criminal convictions for possession with intent to distribute controlled substances, aggravated assault, and carrying an unlicensed firearm "shows that he would pose such a danger to others if armed because those activities could lead to violent confrontation"); *Williams*, 113 F.4th at 663 (holding

---

[3] *See also United States v. Birry*, No. 3:23-cr-288, 2024 WL 3540989, at *8 (M.D. Pa. July 25, 2024) (finding that two prior convictions for possession with intent to distribute methamphetamine showed defendant posed a credible threat to public safety); *United States v. Roach*, No. 2:24-cr-77, 2025 WL 871618, at *2 (E.D. Pa. Mar. 20, 2025) (discussing that "drug dealing" convictions establish a defendant's dangerousness); *United States v. Trusty*, 2025 WL 830124, at *5 (D.N.J. Mar. 17, 2025) (holding that defendant's four "prior drug offenses *were* dangerous because *drug dealing* is inherently dangerous").

that a person convicted of a crime is dangerous and can be disarmed if he has

committed, among others, "a crime that inherently poses a significant threat of

danger, including (but not limited to) drug trafficking and burglary"); *Williams*,

2025 WL 1341877 at *2 (holding that prior convictions for possession with intent

to distribute cocaine and marijuana and child endangerment constitute a

"dramatically different criminal record" than Bryan Range for purposes of Second

Amendment analysis); *Mollett*, 2025 WL 564885 at *7 (holding that three prior

convictions for drug trafficking less than two years prior to the Section 922(g)(1)

offense support the conclusion that defendant presented a special danger of

misusing firearms and was subject to disarmament).

　　　Quinones's argument that the dangerousness requirement creates a

vagueness in Section 922(g)(1) that rises to the level of a due process violation

making the statute facially unconstitutional also fails.  (*See* Doc. 294, pp. 6–7.)

First, this argument was raised for the first time in Quinones's supplemental reply

brief and the Government has not had an opportunity to respond.  Thus, as a

procedural matter, the court will not review an argument raised for the first time in

a reply brief.  Even so, this is not a colorable argument because Quinones fails to

show how Section 922(g)(1) is unconstitutional as applied to him, which is

required to sustain a facial vagueness challenge.  *See United States v. Harris*, No.

21-3031, --- F.4th ----, 2025 WL 1922605, at *9 (3d Cir. 2025) ("The Supreme

20

Court has long held that, with few exceptions, a defendant whose conduct is 'clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others.'")

Based on this review of Quinones's criminal record, it is clear that Quinones presents a far greater risk of dangerousness than Bryan Range if permitted to be armed. Thus, based on the above analysis, the court concludes that Section 922(g)(1) is not unconstitutional as applied to Quinones.

## CONCLUSION

For the foregoing reasons, Quinones's motion to dismiss, Doc. 183, will be denied. An implementing order will follow.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Judge
Middle District of Pennsylvania

Dated: July 29, 2025